SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
EDWARD D. VOGEL, Cal. Bar No. 110081
JOHN C. DINEEN, Cal. Bar No. 222095
MARK G. RACKERS, Cal. Bar No. 254242
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:   619.338.6500
Facsimile:   619.234.3815
E-mail:         evogel@sheppardmullin.com
           jdineen@sheppardmullin.com
           mrackers@sheppardmullin.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD HUNTINGTON, an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., a National Association and DOES 1-100, INCLUSIVE,<br><br>        Defendants. | Case No.<br>(Removed from Napa County Superior Court, Case No. 18CV000681)<br><br>**WELLS FARGO BANK, N.A.'S NOTICE OF REMOVAL**<br><br><br>Complaint Filed: May 23, 2018 |

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby removes to this Court the state court action styled as *Donald Huntington v. Wells Fargo Bank, N.A.*, Napa County Superior Court, Case No. 18CV000681. The following is a listing of the pleadings to date and a short and plain statement of the grounds for removal:

## STATE COURT COMPLAINT

1.      On May 23, 2018, Plaintiff Donald Huntington ("Plaintiff") filed his complaint against Defendant Wells Fargo and Does 1-100, inclusive, in the Superior Court for the State of California, County of Napa, Case No. 18CV000681 (the "Complaint").

2.      Wells Fargo received a copy of the Complaint and Summons when Plaintiff served its registered agent for service on May 29, 2018. A copy of the Complaint and Summons are attached hereto as **Exhibit A**, which contains all of the documents served on Wells Fargo by Plaintiff and the entire state court file to date.

3.      Wells Fargo has not yet responded to Plaintiff's Complaint.

## THIS COURT HAS DIVERSITY JURISDICTION

4.      This Court has original diversity jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenships between the parties (Plaintiff is a citizen of California and (for removal purposes) Wells Fargo is a citizen of South Dakota) and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**Complete Diversity of Citizenship Exists**

5.      Plaintiff alleges that he is a resident of the State of California. Complaint, ¶ 1.  Thus, for purposes of determining diversity jurisdiction, Plaintiff is a citizen of California.  *See Heinz v. Havelock*, 757 F. Supp. 1076, 1079 (C.D. Cal. 1991) (residence and property ownership are factors in domicile for diversity jurisdiction).

6.      Wells Fargo is not a citizen of California.  Wells Fargo is a national association not organized under the laws of any state.  National banks are "deemed citizens of the States in which they are respectively located."  28 U.S.C. § 1348.  For purposes of diversity jurisdiction, a national bank is "located" only in the state where the bank has designated its main office. *Rouse v. Wachovia Mortgage, FSB,* 747 F.3d 707, 715 (9th Cir. 2014) (holding that, under 28 U.S.C. § 1348, "a national banking association is a citizen only of the state in which its main office is located," and further holding that "Wells Fargo is a citizen only of South Dakota, where its main office is located").  Wells Fargo has designated its main office as located in South Dakota; accordingly, Wells Fargo is a citizen of South Dakota, and no other state for diversity purposes.  *See id.*

7.    For purposes of determining diversity jurisdiction, the citizenship of "Doe" defendants being sued under fictitious names is disregarded.  *See* 28 U.S.C. § 1441(b)(1).

**The Amount In Controversy Exceeds $75,000.00**

8.    "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.  If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation." *Reyes v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 113821, at *12-13 (N.D. Cal. June 29, 2010) (internal citations omitted).  Some courts have held the amount in controversy in such cases should be measured by the amount of indebtedness.  *See Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028-29 (N.D. Cal. 2010) (noting the split in approach by district courts).  Here, Plaintiff is seeking "injunctive relief stopping any non-judicial foreclosure sale" of the real property located at 9 Saint Francis Circle, Napa, CA 94558 (the "Subject Property").  Complaint, prayer.  Wells Fargo is informed and believes that the Subject Property is worth in excess of $700,000.[1]  With regard to the amount of indebtedness at issue in this case, Plaintiff alleges that he obtained a loan from Wachovia Mortgage Corporation in the principal amount of $100,000, a loan that was later transferred to Wells Fargo.  Complaint, ¶¶ 22-23.

9.    Accordingly, under either approach, the amount in controversy exceeds $75,000.

---

[1]    Wells Fargo notes that estimates of the value of the Subject Property are readily available online on such websites as Redfin.  *See e.g.,* https://www.redfin.com/CA/Napa/9-St-Francis-Cir-94558/home/12209933

**THIS NOTICE OF REMOVAL IS PROCEDURALLY PROPER**

10.    In accordance with 28 U.S.C. § 1446(a), all copies of papers filed in the State Court action as of the filing of this Notice of Removal are attached to this Notice.

11.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a) because it is filed on June 28, 2018, which is within 30 days of the first service on any defendant of a copy of the complaint, excluding "the day of the act, event, or default from which the designated period of time begins to run."

12.    Venue in this Court is proper pursuant to 28 U.S.C. § 1446(a) because this action was removed from Napa County Superior Court, located within the District and Division of the Court.

13.    Pursuant to 28 U.S.C. § 1446(d), Wells Fargo is providing written notice to Plaintiff of the removal of this action.

14.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of the State of California, County of Napa.

15.    Wells Fargo is the only named defendant in this action.  Wells Fargo is not required to investigate the identity of the unnamed defendants or to obtain their consent for removal.  *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998).  In any event, no Doe defendant has been served.  Wells Fargo is not required to obtain consent to remove from defendants who have not

1  been served.  *See* 28 U.S.C. § 1446(b); *Salveson v. Western States Bankcard Ass'n*,

2  731 F.2d 1423, 1429 (9th Cir. 1984).

3

4                                **CONCLUSION**

5

6          For all of the reasons set forth above, Wells Fargo removes the original

7  action brought by Plaintiff in the Superior Court of the State of California for the

8  County of Napa to this Court.

9

10 Dated:  June 28, 2018

11                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13              By  _____
                              *s/ Mark G. Rackers*

14                              EDWARD D. VOGEL
                               JOHN C. DINEEN

15                             MARK G. RACKERS

16                           Attorneys for Defendant
                           WELLS FARGO BANK, N.A.

17                   Email: mrackers@sheppardmullin.com

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A., a National Association and DOES
1-100, INCLUSIVE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DONALD HUNTINGTON, an individual,

**ENDORSED**

MAY 23 2018

Clerk of the Napa Superior Court
By: _____ K. ROSE _____
Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Historic Courthouse | CASE NUMBER: *(Número del Caso):* 18CV000681 |
| --- | --- |

825 Brown St.
Napa, CA 94559

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
RA & Associates, APC, Malalai Anbari, 505 N. Brand Blvd., Ste. 800, Glendale, CA 91203, 818-230-3220

DATE: 5-23-18 (*Fecha*)   RICHARD D. FELDSTEIN   Clerk, by *(Secretario)*   K. ROSE   Deputy *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* Wells Fargo Bank, N.A., a National Association

   under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [X] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [✓] by personal delivery on *(date):* 5/29/18

SEAL

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courts.ca.gov |
| --- | --- | --- |

DELAY REDUCTION CASE

1    RA & ASSOCIATES, APC
     ROMEL AMBARCHYAN, ESQ. (SBN 245216)

2    ANY MOSKOVIAN, ESQ. (SBN 313476)
     MALALAI ANBARI, ESQ. (SBN 304482)

3    505 N. Brand Blvd. Suite 800
     Glendale, CA 91203

4    Telephone: (818) 230-3220

5    Facsimile: (818) 230-3211

6
     Attorneys for Plaintiff,

7    DONALD HUNTINGTON

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF NAPA

10

11   DONALD HUNTINGTON, an individual,        CASE NO.:  **18CV000681**

12          Plaintiff,                        **VERIFIED COMPLAINT FOR:**

13
                                              1) **BREACH OF COVENANT OF**
14          v.                                   **GOOD FAITH AND FAIR**
                                                 **DEALING;**
15                                            2) **PROMISSORY ESTOPPEL;**
                                              3) **ACCOUNTING;**
16   WELLS FARGO BANK, N.A., a National       4) **ELDERLY FINANCIAL**
     Association and DOES 1-100, INCLUSIVE,      **ABUSE;**
17                                            5) **NEGLIGENCE;**
            Defendants.                       6) **UNFAIR BUSINESS**
18                                               **PRACTICES**

19

20                                            **DEMAND FOR JURY TRIAL**

21

22                                            CASE MANAGEMENT CONFERENCE
                                              DATE: 10/31/2018
23                                            TIME: 2:00pm
                                              PLACE: Courtroom  I
24                                            1111 Third St. Napa, CA 94559

25

26

27

28

**ENDORSED**

MAY 23 2018

Clerk of the Napa Superior Court

By: ___K. ROSE___
            Deputy

File By Fax

1.
Verified Complaint

1        COMES NOW the Plaintiff DONALD HUNTINGTON ("Plaintiff"), who hereby

2    demands a speedy jury trial on all causes of actions stated herein, and hereby alleges as his

3    Verified Complaint against WELLS FARGO, N.A. as follows:

<b>PARTIES</b>

4

5        1.    Plaintiff, DONALD HUNTINGTON ("Plaintiff") is, and at all times relevant to

6    the facts herein, an individual residing in real property commonly known as 9 Saint Francis

7    Circle, Napa, CA 94558 ("Subject Property"), located in the County of Napa, in the State of

8    California.

9        2.    Defendant, WELLS FARGO, N.A. ("WELLS"), is a National Association. At all

10    times referenced herein, Defendant WELLS purported to have authority to conduct business

11    within the State of California on a regular basis.

12        3.    The true names and capacities, whether individual, corporate, partnership,

13    associate, or otherwise of Defendants DOES 1 through 100, are unknown to Plaintiff, who sues

14    each Defendant by such fictitious names. Plaintiff is informed and believes and based thereon

15    alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in

16    some manner, was, responsible for the events and happenings referred to herein, either

17    contractually or tortuously. When Plaintiff ascertains the true names and capacities of DOES 1

18    through 100, they will amend this Complaint accordingly.

19        4.    Plaintiff is informed and believes and based thereon alleges that all Defendants

20    are, and at all times herein mentioned were, the agents, joint venturers, officers, members,

21    representatives, servants, consultants or employees of their co-defendants, and in committing the

22    acts herein alleged, were acting within the scope of such affiliation with the knowledge,

23    permission, consent or subsequent ratification of their co-defendants.

<b>JURISDICTION AND VENUE</b>

24

25        5.    This Court has subject matter jurisdiction over this matter as the Subject Property

26    is located in the County of Napa, California.

27

28

2.

Verified Complaint

6.  In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

7.  Defendants herein purposefully directed their activities to the State of California. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Napa, out of which this action arises and which form the basis of this action.

8.  Defendants either are entities duly licensed to do business in the State of California or are entities that regularly conduct business within this judicial district within California.

9.  Venue is proper for this Court since the Subject Property (described below) is located in the County of Napa and because the events or events out of which this action arises and which form the basis for this action arise in the County of Napa.

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTIONS

### HOME AFFORDABLE MODIFICATION PROGRAM (HAMP)

10.  On February 18, 2009, pursuant to their authority under the Emergency Economic Stabilization Act of 2008, the U.S. Treasury Secretary and the Director of the Federal Housing Finance Agency announced the MAKING HOME AFFORDABLE (MHA) program. The MAKING HOME AFFORDABLE program consists of two subprograms. The first program is referred to as HOME AFFORDABLE REFINANCE PROGRAM, or HARP. The second program is referred to as HOME AFFORDABLE MODIFICATION PROGRAM (Hereinafter HAMP). The latter is the program at issue in this case.

11.  HAMP is funded by the Federal Government, primarily with Troubled Asset Relief Program (TARP) funds. The U.S. Treasury Department has allocated at least $75 billion to HAMP, of which at least $50 billion in TARP money. Because mortgage lenders accepted federal funds additional loan guarantees, it was required to participate in HAMP for any loans on which it functions as a loan "servicer." Mortgage lenders acted as Loan Servicer for the subject loan of Plaintiffs. In addition, mortgage lenders signed an AMENDED AND RESTATED COMMITMENT TO PURCHASE FINANCIAL INSTRUMENTS AND SERVICER

3.

Verified Complaint

1    PARTICIPATE AGREEMENT, agreeing to participate in the HOME AFFORDABLE

2    MODIFICATION PROGRAM (HAMP), including all its directives and guidelines.

3    ### THE SERVICER PARTICIPATION AGREEMENT (SPA)

4        12.    The SERVICER PARTICIPATION AGREEMENT (hereinafter "SPA") mandates

5    that a participating Servicer "shall perform" the activities described in the Program

6    Documentation "for all mortgage loans it services," SPA Section 2(A), page 3.

7        13.    The Program Documentation requires participating Servicers to: (1) evaluate all

8    loans that are 60 or more days delinquent or appear to be in imminent default (as defined by the

9    Program Documentation); and (2) determine which loans meet the HAMP eligibility criteria.  In

10    addition, the Participating Servicers, such as mortgage lenders, must collect income and hardship

11    information to determine if the borrower is eligible for a HAMP loan modification.  A HAMP

12    loan modification consists of two stages.  First, a Participating Servicer is required to gather

13    information and, if appropriate, offer the homeowner a Trial Period Plan (hereinafter "TPP").

14    Second, upon successful completion, the Servicer must offer the homeowner a permanent

15    modification.

16        14.    Because servicers signed a SPA with the U.S. Treasury Department to provide

17    HAMP loan modifications to benefit homeowners in return for receiving TARP funds, mortgage

18    lenders are required by law to comply with the requirements of the SPA.

19        15.    Ever since, the national press has been reporting stories of numerous illegalities in

20    the policies, practices, and procedures of mortgage lenders and other lenders/servicers.  The

21    evidence is overwhelming that mortgage lenders and other lenders/services have been acting

22    outside of the law since the crisis began.  This action is a prime example of mortgage lenders and

23    their agents' wrongful and illegal conduct in their greed for property and fees at any costs without

24    any regard for the rights of homeowners and borrowers.

25    ### MARCH 2012 BANK SETTLEMENT

26        16.    In March 2012, the government shed light on the wrongful and illegal conduct of

27    Mortgage lenders and other major servicers with a landmark $25 billion settlement with the five

28    largest U.S. mortgage lenders.

4.

Verified Complaint

17.    According to the eight-count government complaint, the nation's five largest banks "engaged in a pattern of unfair and deceptive practices" in servicing mortgages, handling loan modifications, and originating loans.  The complaint went on to state that the banks' foreclosure filings contained "false and misleading documents", including affidavits that were filed without being verified, a practice that came to be known as "robosigning".

18.    Pursuant to the settlement, the banks will have to pay $5 billion cash to state and federal governments and provide $20 billion in financial relief to mortgage customers, in the form of interest rate reductions and principle balance reductions.

19.    On April 8, 2016, the Office of Public Affairs for the Department of Justice issued a news release, announcing that WELLS agreed to pay $1.2 billion for improper mortgage lending practices from May 2001 through December 2008.  As part of the settlement, WELLS admitted, acknowledged, and accepted responsibility for, among other things, certifying to the Department of Housing and Urban Development, that certain residential home mortgage loans were eligible for FHA insurance, when in fact they were not.  This resulted in the Government having to pay FHA insurance claims when some of those loans defaulted.

20.    This was not WELLS's first settlement for abuses in mortgage lending and foreclosure activities.  Other WELLS settlements include, but are not limited to: 1) failing to timely and accurately apply payments made by borrowers, and failing to maintain accurate account statements; 2) providing false or misleading information in response to borrower complaints; 3) failing to provide accurate and timely information to borrowers who seek information about loss mitigation services, including loan modifications; 4) providing false or misleading information to consumers about the status of their loss mitigation review, while referring loans to foreclosure; 5) providing false or misleading information to consumers about the status of foreclosure proceedings, where the borrower was in good-faith actively pursuing loss mitigation alternatives offered by the servicer; 6) failing to properly calculate borrowers' eligibility for loan modification programs, and also failing to properly process borrowers' applications for loan modifications, which resulted in improper denials of loan modifications to eligible borrowers; 7) providing false or misleading reasons for denial of loan modifications; and

5.

Verified Complaint

1    8) preparing, executing, notarizing, and filing false and misleading documents with courts and

2    government agencies as part of the foreclosure process.

3        21.    Such unlawful acts are also evidence in the present case, as explained below.

4                        **FACTUAL BACKGROUND ALLEGATIONS**

5        22.    On or about August 21, 2007, Donald Huntington obtained a loan on the Subject

6    Property in the amount of One Hundred Thousand Dollars ($100,000.00) ("Note") through

7    Wachovia Mortgage Corporation, as the lender of the Note. The Note was secured by a Deed of

8    Trust. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "A"**. The

9    Subject Property has been, and continues to be, Plaintiff's primary residence.

10       23.    Sometime thereafter, the Note was transferred to Defendant WELLS FARGO,

11    N.A. ("WELLS"). WELLS purports to be the current lender and/or servicer of the Note.

12       24.    Plaintiff, who is an eighty-two (82) year-old man, was contacted several times by

13    WELLS representatives informing him that he qualifies for a loan modification.

14       25.    In 2006, Plaintiff experienced a stroke and spent a year on the east coast where he

15    received medical treatment. Since that time, Plaintiff began to experience financial difficulties.

16    Despite his best efforts, Plaintiff reluctantly fell behind in his payments on or around October

17    2017.

18       26.    On or around October 2017, a WELLS representative informed Plaintiff that no

19    missed payments from October 2017 until January 2018 will be reported to credit bureaus

20    because of several California wildfires.

21       27.    On or around January 2018, Plaintiff contacted WELLS for reduced monthly

22    payments on his Note. The first WELLS representative Plaintiff spoke with advised Plaintiff to

23    apply for a loan modification, and promised him that he would be approved for a loan

24    modification. Moreover, the WELLS representative instructed Plaintiff to stop making his

25    monthly mortgage payments until his loan modification was granted, and told him not to worry

26    because his missed payments would be added to the back end of the loan. Based on these

27    instructions, Plaintiff did not make payments on the Note and submitted the documents necessary

28    to obtain the loan modification he was promised.

6.

Verified Complaint

28.     Subsequently, Plaintiff was informed by WELLS representative Lizette De Garza that, even though he submitted his loan modification application ("LMA") materials by email, he must now submit the documents by fax. Plaintiff submitted the required materials by fax. Plaintiff contacted WELLS again and was informed that WELLS did not receive the documents. Further, Plaintiff was informed that a lease agreement, conveying the tenant's income, must also be submitted for his LMA.

29.     Plaintiff went in person to a WELLS branch in Napa and a WELLS representative, working at the branch, faxed the loan modification documents. Plaintiff requested a confirmation of transmission, which WELLS refused to provide.

30.     After a week, Plaintiff contacted WELLS to confirm submission of the documents but, again, the WELLS representative stated that they did not receive the loan modification documents. This representative provided Plaintiff with an ID number to upload all the required documents. Sometime thereafter, Plaintiff was informed his new assigned representative was Brittany Atcheson. Plaintiff sent emails and left messages to Atcheson but was never able to reach her and Atcheson never return his calls or messages.

31.     Unbeknownst to Plaintiff, WELLS had a Notice of Default ("NOD") recorded against Subject Property on March 19, 2018. A true and correct copy of the NOD is attached hereto as Exhibit "B".

32.     Plaintiff never received any correspondence, phone calls and had no voicemails from WELLS prior to the recordation of the NOD and Plaintiff had the same primary phone number on file for years.

33.     During one communication with a representative, Plaintiff was provided with a supervisor's name and contact information. In the span of three days, from when Plaintiff received the supervisor's phone number to when Plaintiff was finally able to reach the supervisor, Plaintiff received the NOD and was informed about the foreclosure sale date scheduled for July 17, 2018.

34.     Plaintiff contacted the WELLS supervisor and inquired about the NOD and foreclosure sale date. The supervisor stated that Plaintiff should not have received the NOD and

7.

Verified Complaint

1   Plaintiff received assurances from the WELLS supervisor that foreclosure proceedings will not be

2   initiated. Furthermore, despite contradictory statements by other WELLS representatives, the

3   Supervisor confirmed receipt of the documents faxed by Plaintiff from the branch in Napa,

4   California.

5         35.     During this conversation with the Supervisor, Plaintiff also informed the

6   supervisor of his frustrations being asked to submit the same documents over and over and

7   transferred from representative to representative. Plaintiff was first assigned to Lizette de Garza

8   before being transferred to Brittany Atcheson, who did not return Plaintiff's phone calls and

9   messages.

10        36.     Sometime thereafter, Plaintiff is assigned to WELLS representative Steve Manuel,

11  who remains Plaintiff's current representative. Manuel advised Plaintiff to remove the hardship

12  section of the LMA. Plaintiff had suffered a stroke and intended to send medical documentation

13  discussing his health difficulties. However, based on Manuel's recommendation and his

14  statement that it would not make a difference, Plaintiff removed the hardship section of his LMA.

15        37.     Finally, Plaintiff successfully uploaded all the required documents sometime in

16  March 2018.

17        38.     Additionally, Plaintiff has contacted Steve Manuel for the reinstatement amount

18  and accounting. Manuel provided the contact information for the foreclosure department. The

19  representative from the foreclosure department provided the amount owed but did not provide an

20  accounting because "nobody ordered" the accounting. Further, Plaintiff has been informed the

21  reinstatement amount provided was approximately $7,000. To date, Plaintiff has still not

22  received an accounting of the Note.

23        39.     On or around May 21, 2018, Plaintiff received a denial to his loan modification

24  application, but the letter did not provide a sufficient basis for the denial.

25        **40.     It is Plaintiff's contention that the stalling technique of Defendants was done**

26  **for the sole attempt and purpose of depleting Plaintiff's equity in his property and to take**

27  **his home.**

28        41.     Plaintiff is informed and believes and based thereon alleges that Defendants intend

8.

Verified Complaint

1  to foreclose upon the Subject Property.  As of the date of this filing, Defendants continue to

2  threaten the foreclosure of the Subject Property.

3      42.  By way of this Verified Complaint, Plaintiff seeks to enjoin Defendants from

4  selling Plaintiff's property at an auction.  Plaintiff also seek damages for costs incurred from

5  Defendants' blatant violation of the requirements of California Civil Code section 17200 et seq.

6  of the Business and Professions Code, among other violations.

7             **FIRST CAUSE OF ACTION**

8     **(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)**

9         **Against ALL DEFENDANTS & DOES 1–100**

10      43.  Plaintiff re-alleges and incorporates by reference herein each and every allegation

11  contained in the foregoing and successive paragraphs.

12      44.  Defendant's conduct, as alleged, constitutes a breach of the covenant of good faith

13  and fair dealing implied in every contract under California law.  This covenant creates an

14  obligation in Defendants not to hinder or prevent Plaintiff's ability to perform under the contract

15  or receive the benefit of the contract.

16      45.  After Plaintiff executed a contract to enter into a loan agreement, the covenant of

17  good faith and fair dealing attached to the servicing of the Note.  Here, Defendants breached the

18  covenant of good faith and fair dealing and interfered with Plaintiff's ability to perform under the

19  contract by 1) refusing to provide a payoff statement and accounting of the Note, thereby

20  hindering Plaintiff's ability to determine the total amount owed and fully pay off the Note; 2)

21  recording a NOD and initiating foreclosure proceedings despite informed by WELLS that it

22  should not have occurred; 3) refusing to provide Plaintiff with any meaningful assistance; 4)

23  improperly conducting an appraisal on a property across the street, rather than on Subject

24  Property; 5) requesting the same documents over and over, which caused significant delays in the

25  review process and prolonged the length of time Plaintiff remained in default; and 6) transferring

26  Plaintiff from representative to representative, some of whom Plaintiff experienced great

27  difficulty in reaching.

28      46.  For years, Plaintiff substantially performed under the loan agreement, making his

                     9.

1   full monthly payments on time every month. In fact, Plaintiff relied on WELLS promise to

2   provide a loan modification and place the missed payments on the back-end of the loan.

3       47.    Defendants' negligence in handling Plaintiff's loan modification application

4   review, in responding to Plaintiff's requests for assistance, and failure to provide an accounting of

5   his loan, coupled with prolonged review and major communication failures, forced Plaintiff into

6   an artificially continued default, whereby if assistance was offered, Plaintiff would have had other

7   means to save his home.

8       48.    Therefore, because Defendants induced Plaintiff not to perform under the contract

9   by failing to provide assistance as required by law, Plaintiff's performance was excused as set

10   forth in section 1511 of the California Civil Code, which states if a defendant does some act

11   naturally tending to induce the plaintiff not to perform, the plaintiff's failure to perform is

12   excused. When this occurs, according to section 1512 of the California Civil Code, the plaintiff is

13   entitled to all benefits of the contract had it been performed by both parties. As such, no

14   conditions existed that would interfere with Defendant performing under the contract, and all

15   conditions necessary for Defendants to fulfill its obligations under the contract had occurred when

16   Defendants forced Plaintiff to continue to stay in default as they failed to properly process his

17   foreclosure alternative requests.

18       49.    As a proximate result of Defendants' actions and practices, Plaintiff's credit has

19   been detrimentally impacted, unnecessary penalties and fees have tacked onto his account, and

20   Plaintiff now risks the loss of his family home through foreclosure. Plaintiff has incurred contract

21   damages, according to proof at trial, attorney's fees, and costs to save the home.

22   <u>SECOND CAUSE OF ACTION</u>

23   (PROMISSORY ESTOPPEL)

24   **Against ALL DEFENDANTS & DOES 1–100**

25       50.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

26   contained in the foregoing and successive paragraphs.

27       51.    The elements for promissory estoppel are: 1) Defendant made a promise that was

28   clear and unambiguous; 2) promise relied on the promise by acting, or forbearing to act; 3) the

10.

Verified Complaint

1    reliance was both reasonable and foreseeable; 4) the party asserting the estoppel was injured by

2    his reliance ("detrimental reliance'); and 5) injustice can only be avoided by enforcement of the

3    promise.

4       52.    Plaintiff, who is an eighty-two (82) year-old man, was contacted several times by

5    WELLS representatives informing him that he qualifies for a loan modification.

6       53.    On or about October 2017, a WELLS representative informed Plaintiff that no

7    missed payments from October 2017 until January 2018 will be reported to credit bureaus

8    because of several California wildfires.

9       54.    On or around January 2018, Plaintiff contacted WELLS for reduced monthly

10    payments on his Note. The first WELLS representative Plaintiff spoke with advised Plaintiff to

11    apply for a loan modification, and promised him that he would be approved for a loan

12    modification. Moreover, the WELLS representative instructed Plaintiff to stop making his

13    monthly mortgage payments until his loan modification was granted, and told him not to worry

14    because his missed payments would be added to the back end of the loan. Based on these

15    instructions, Plaintiff did not make payments on the Note and submitted the documents necessary

16    to obtain the loan modification he was promised. His reliance is reasonable because, as his

17    servicer, Defendant had a duty to exercise reasonable care in what was promised to Plaintiff,

18    provide a good faith review of his LMA, and Plaintiff should receive the loan modification he

19    was promised. As a result, he is now injured because he has a default on his loan and is facing

20    foreclosure of his home by relying on WELLS's promise to grant him a loan modification. This

21    injury can only be addressed by granting the loan modification WELLS originally promised and

22    Plaintiff ultimately relied upon, because it is the only way to truly hold WELLS accountable for

23    its willful misrepresentations and negligence in handling Plaintiff's account.

24                     **THIRD CAUSE OF ACTION**

25                        **(ACCOUNTING)**

26              **Against ALL DEFENDANTS & DOES 1–100**

27       55.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

28    contained in the foregoing and successive paragraphs.

11.

Verified Complaint

56.    Pursuant to section 2943 of the California Civil Code, upon their request, a borrower is entitled to a detailed accounting of their loan.

57.    Plaintiff has contacted Steve Manuel for the reinstatement amount and accounting. Manuel provided the contact information for the foreclosure department. The representative from the foreclosure department provided the amount owed but did not provide an accounting because "nobody ordered" the accounting. Further, Plaintiff has been informed the total amount owed was approximately $25,000 on prior occasions but, here, the reinstatement amount provided was $7,000.

58.    To date, Plaintiff has still not received an accounting of the Note. Such accounting should include the unpaid balance, accrued interest, daily interest charge, Corporate Advance and all other fees, costs or expenses comprising the alleged payoff sum, and proof that such a sum was provided to Plaintiff.

59.    Plaintiff is legally entitled to such an accounting, yet Defendants have failed to provide one in a timely manner in compliant with California Civil Code Section 2943. Plaintiff requires said accounting in order to be fully apprised of the details of the payoff sum being demanded, and to thereby be able to assess the propriety of the payoff demand.

<u>FOURTH CAUSE OF ACTION</u>

(ELDERLY FINANCIAL ABUSE)

Against ALL DEFENDANTS and DOES 1–100

60.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in the foregoing and successive paragraphs.

61.    Pursuant to section 15610.30(a)(2) of the Welfare and Institutions Code, financial elder abuse occurs when a person or entity takes, secretes, appropriates, or retains (or assists in taking, secreting, appropriating, or retaining) "real or personal property of an elder or dependent adult to a wrongful use or with the intent to defraud, or both." It covers any appropriation or retention of property made in bad faith. If the party knew or should have known that the elder had a right to possess the property, he or she will be deemed to have acted in bad faith.

62.    Plaintiff was approximately eighty-two years old when he made attempts at

12.

Verified Complaint

1   modifying his loan and seeking foreclosure alternatives with WELLS. As such, in accordance

2   with section 15610.27 of the Welfare and Institutions Code, he was a senior citizen and is

3   therefore afforded special protections under the laws of the State of California.

4         63.    Defendants gave Plaintiff the runaround for months while he struggled to save the

5   home he shared with his family. Defendants repeatedly required Plaintiff to submit the same

6   documents over and over while making it difficult to receive answers to his questions, dragging

7   the application process out much longer than necessary.

8         64.    As a result, Plaintiff continued to fall further and further behind on his payments.

9   During his many phone calls and emails to obtain updates about the status of his LMA and even

10   whether WELLS received the LMA documents, he was provided incorrect information about the

11   status of his account and requests. During that time, however, Defendants were actually moving

12   forward with foreclosure proceedings of Plaintiff's home.

13         65.    Defendants knew Plaintiff's age and disability and were further made aware on

14   many occasions the stress they were causing him. Whenever Plaintiff tried reaching out to

15   Defendants for answers, they would not give him any information or assistance, leaving Plaintiff

16   in the dark under severe distress regarding the status of his home.

17         66.    Defendants' acts were willful, shameless, and deliberate, and done in complete

18   disregard of the financial and emotional harm that would befall Plaintiff. Plaintiff now faces the

19   loss of his home, despite the efforts he took to try to obtain the modification Defendants assured

20   him he would receive.

21         67.    In its inception in 1994, the financial elder abuse statute imposed liability only on

22   those who stood in a fiduciary relationship to an elderly person. Labeling the violation "fiduciary

23   abuse", the original law made it a violation for anyone standing in a position of trust with an elder

24   to take or appropriate money or property for any use outside the purpose for which the money or

25   property had been entrusted. The legislative intent behind the statute was to improve our State's

26   responsibilities when dealing with elders.

27         68.    Defendants, and each of them, are guilty of recklessness, oppression, fraud, and

28   malice within the meaning of Welfare and Institutions Code section 15657.5 and section 3294 of

13.

Verified Complaint

1   the California Civil Code.

2       69.    Therefore, under section 15657 of the Welfare and Institutions Code, Defendants

3   are liable for Plaintiff's pain and suffering, to be determined at trial.

4   **FIFTH CAUSE OF ACTION**

5   (NEGLIGENCE)

6   **Against ALL DEFENDANTS & DOES 1–100**

7       70.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

8   contained in the foregoing and successive paragraphs.

9       71.    Defendants, acting as Plaintiff's lender and/or servicer, undertook a review of

10  Plaintiff's loss mitigation requests, and having done so, they owed Plaintiff the duty to exercise

11  reasonable care in processing and reviewing his requests prior to threatening Plaintiff with a

12  foreclosure sale of his home.

13      72.    Defendants breached their duty by: (1) failing to provide a decision on the loan

14  modification application; (2) instructing Plaintiff not to make his monthly payments because the

15  missed payments would be added at the back-end of the loan and Plaintiff would be granted a

16  loan modification, which he has not yet received; (3) requiring Plaintiff to submit the same

17  documents over and over and providing inconsistent responses concerning receipt of LMA

18  documents; (4) advising Plaintiff not to submit the hardship portion of the LMA, which may

19  impact whether or not Plaintiff ultimately receives a loan modification (5) failing to provide an

20  accounting of the Note despite Plaintiff's request; (6) transferring Plaintiff's account to multiple

21  representatives, some of whom did not respond to phone calls and messages, and caused

22  unnecessarily delays in the review process, which prolonged the length of time Plaintiff remains

23  in default; and (6) initiating and continuing foreclosure in violation of public policy and statutory

24  restrictions on foreclosures.

25      73.    The transaction was intended to affect Plaintiff and it was entirely foreseeable that

26  advising Plaintiff not to make his monthly payments because the missed payments will be added

27  to the back-end of the loan, promising Plaintiff a loan modification but not yet granting him one,

28  not providing a good faith review of his application, advising Plaintiff not to submit the hardship

14.

Verified Complaint

1   portion of the LMA, failing to provide an accounting, providing contradictory statements about

2   receipt of documents, and failing to provide Plaintiff a decision on his LMA, would cause

3   significant harm to Plaintiff, in that the decision on Plaintiff's requests and submissions would

4   determine whether Plaintiff could keep his home.

5       74.    The injury to Plaintiff is certain. The improper processing of Plaintiff's loan

6   modification application package, including requests for Plaintiff to submit the same documents

7   over and over and advising Plaintiff not to include the hardship portion of the LMA, may prevent

8   a good faith review of Plaintiff's loan modification application, which would deprive Plaintiff of

9   the possibility of receiving the loan modification he was promised. Lastly, refusing to provide an

10  accounting places the Plaintiff in a position of uncertainty as to the correct amount owed in order

11  to pay off the Note.

12      75.    There is a close connection between Defendants' conduct and Plaintiff's injuries.

13  Defendants' conduct in improperly processing Plaintiff's LMA, promising a loan modification

14  which Plaintiff has not yet received, transferring Plaintiff from representative to representative,

15  advising Plaintiff to remove the hardship portion of the LMA as it was not necessary, and not

16  providing a decision on the LMA while pushing foreclosure proceedings precludes Plaintiff from

17  obtaining a foreclosure alternative and places Subject Property at risk of foreclosure.

18      76.    The policy of preventing future harm favors imposing a duty of care on an entity in

19  Defendants' position. As a direct and proximate result of the negligence and carelessness of

20  Defendants and their representatives, Plaintiff has suffered, and continues to suffer, general and

21  special damages, in an amount to be determined at trial.

22                          **SIXTH CAUSE OF ACTION**

23                          **(UNFAIR BUSINESS PRACTICES)**

24                      **Against ALL DEFENDANTS and DOES 1–100**

25      77.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

26  contained in the foregoing and successive paragraphs.

27      78.    The Unfair Competition Law defines unfair competition to include any "unfair,"

28  "unlawful," or "fraudulent" business act or practice. California Business and Professions Code

15.

Verified Complaint

1  §17200, *et seq.* As the Supreme Court of California has held, **a business practice can be**
2  **"unfair" and violative of section 17200, even if it is not "deceptive" and even if it is "lawful."**
3  The Act also provides for injunctive relief and restitution for violations.

4       79.    By virtue of the acts and omissions of Defendants, they have engaged in unfair
5  competition within the meaning of California Business and Professions Code §17200, thereby
6  entitling Plaintiff to injunctive and restitutionary relief as provided by California Business and
7  Professions Code §17203. More specifically, Defendants failed to provide a decision on
8  Plaintiff's LMA, failed to provide a detailed accounting of Plaintiff's loan, asked for the same
9  documents over and over, transferred Plaintiff from representative to representative, and
10  improperly advised Plaintiff to remove the hardship section of his LMA, which may affect
11  whether or not Plaintiff will receive the loan modification he was promised.

12       80.    The aforementioned acts were willful, oppressive, and malicious, in that
13  Defendants engaged in acts of unfair competition with the deliberate intent to injure Plaintiff.

14       81.    As a direct and foreseeable result of the Defendants' violation of Business and
15  Professions Code section 17200, Plaintiff has suffered, and will continue to suffer, substantial
16  irreparable harm, including but not limited to the back dues and interest that have accrued to date
17  that would not have accrued but for Defendants' action, the cost and expense of the instant
18  pending litigation, and other actual and consequential damages that will be proven on date of trial.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

16.
Verified Complaint

## PRAYER

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

1.    For compensatory, special, and general according to proof against all Defendants.

2.    For injunctive relief stopping any non-judicial foreclosure sale;

3.    Damages in excess of $25,000 which account for all back due fees, interest, foreclosure fees, legal fees, and penalties, accrued during the foreclosure process.

4.    Pursuant to Business and Professions Code section 17200, that all Defendants, their successors, agents, representatives, employees, and all person who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of 17200, including, but not limited to, the violations alleged herein.

5.    For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

6.    For reasonable costs of suit and such other and further relief as the Court deems proper.

Dated: May 23, 2018                    RA & ASSOCIATES, APC

By: _____
MALALAI ANBARI, ESQ.
Attorney for Plaintiff

17.

Verified Complaint

# EXHIBIT "A"



FIDELITY NATIONAL
TITLE COMPANY

2007-0027410

Recorded
Official Records
County of
Napa
JOHN TUTEUR
Assessor-Recorder-Cou

REC FEE    44.00

CW
01:02PM 21-Aug-2007 | Page 1 of 11

**After Recording, Mail To:**
Wachovia Mortgage Corporation
1100 Corporate Center Drive - NC4723
Raleigh, NC 27607-5066

**Prepared By:**
Wachovia Mortgage Corporation
C/O Service Center
Corporate Mortgage Services
6770 Parker Farm Drive
Wilmington, NC 28405

Application Number:    251  8882299816
2B0301869-JS
APN: 043-382-017

## DEED OF TRUST

THIS DEED OF TRUST is made this day of **August 13, 2007**, among the Trustor; **DONALD HUNTINGTON** , A MARRIED MAN, whose mailing address is the property address (herein "Borrower"), and **DAVID L. POPE** whose mailing address is 201 SOUTH COLLEGE STREET, , CHARLOTTE, NC 28244, (herein "Trustee"), and the Beneficiary, **Wachovia Mortgage Corporation**, a national banking association organized and existing under the laws of the United States of America, whose address is 1100 Corporate Center Drive Raleigh, NC 27607-5066 (herein "Lender").

**\*AS HIS SOLE AND SEPARATE PROPERTY**
WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. **$100,000.00**, which indebtedness is evidenced by Borrower's note dated August 13, 2007 and extensions, modifications and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on August 12, 2047;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to Trustee in trust with power of sale the following described property located in the County of NAPA, State of CALIFORNIA:

### SEE ATTACHED SCHEDULE A.

Parcel No.043-382-017 which has the address of 9 ST FRANCIS CIRCLE, NAPA, CA 94558 (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."

CA Deed of Trust
231233 cad&ed (Rev 19, 08-01)                    Page 1                    251  8882299816

Any Rider ("Rider") attached hereto and executed of even date is incorporated herein and the covenant and agreements of the Rider shall amend and supplement the covenants and agreements of this Deed of Trust, as if the Rider were a part hereof.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note. This Deed of Trust secures payment of said Note according to its terms, which are incorporated herein by reference.

2. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations, under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

3. **Hazard Insurance.** a) Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards, including floods or flood, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 5.

b) All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly to Borrower.

c) Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

d) Except as provided in subparagraph 3(e) below, should partial or complete destruction or damage occur to the Property, Borrower hereby agrees that any and all instruments evidencing insurance proceeds received by Lender as a result of said damage or destruction, shall be placed in a non-interest bearing escrow account with Lender. At Lender's discretion, Lender may release some or all of the proceeds from escrow after Borrower presents Lender with a receipt(s), invoice(s), written estimates(s) or other document(s) acceptable to Lender which relates to the repair and/or improvements of the Property necessary as a result of said damage and/or destruction. Absent an agreement to the contrary, Lender shall not be required to pay Borrower any interest on the proceeds held in the escrow account. Any amounts remaining in the account after all repairs and/or improvements have been made to the Lender's satisfaction, shall be applied to the sums secured by this Deed of Trust, Deed to Secure Debt, or

Mortgage. Borrower further agrees to cooperate with Lender by endorsing all, checks, drafts and/or other instruments evidencing insurance proceeds; and any necessary documents. Should Borrower fail to provide any required endorsement and/or execution within thirty (30) days after Lender sends borrower notice that Lender has received an instrument evidencing insurance proceeds, or document(s) requiring Borrower's signature, Borrower hereby authorizes Lender to endorse said instrument and/or document(s) on Borrowers behalf, and collect and apply said proceeds at Lender's option, either to restoration or repair of the Property or to sums secured by this Deed of Trust, Deed to Secure Debt, or Mortgage. It is not the intention of either party that this escrow provision, and/or Lender's endorsement or execution of an instrument(s) and/or document(s) on behalf of Borrower create a fiduciary or agency relationship between Lender and Borrower.

e) Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments. If under paragraph 15 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument.

**4. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**5. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such actions as is necessary to protect Lender's interest.

Any amounts disbursed by Lender pursuant to this paragraph 5, with interest thereon from the date of disbursal, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder.

**6. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**8. Borrower Not Released; Forbearance By Lender Not a Waiver.** The Borrower shall remain liable for full payment of the principal and interest on the Note (or any advancement or obligation) secured hereby, notwithstanding any of the following: (a) the sale of all or a part of the premises, (b) the assumption by another party of the Borrower's obligations hereunder, (c) the forbearance or extension of time for payment or performance of any obligation hereunder, whether granted to Borrower or a subsequent owner of the property, and (d) the release of all or any part of the premises securing said obligations or the release of any party who assumes payment of the same. None of the foregoing shall in any way affect the full force and effect of the lien of this Deed of Trust or impair Lender's right to a deficiency judgment (in the event of foreclosure) against Borrower or any party assuming the obligations hereunder, to the extent permitted by applicable law.

CA Deed of Trust
231233 cadeed (Rev 19, 08-01)                           Page 3                           251  8662296818

Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**9. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 14, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

**10. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower or the current owner at the Property Address or at such other address as Borrower may designate in writing by notice to Lender as provided herein, and any other person personally liable on this Note as these person's names and addresses appear in the Lender's records at the time of giving notice and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**11. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflicts shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision; and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**12. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note, this Deed of Trust and Rider(s) at the time of execution or after recordation hereof.

**13. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**14. Transfer of the Property or a Beneficial Interest in Borrower; Assumption.** As used in this Section 14, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written

CA Deed of Trust
231233 cadeed (Rev 19, 08-01)

Page 4

251  8882299816

consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 10 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies by this Security Instrument without further notice or demand on Borrower.

**15. Default Acceleration; Remedies.** If any, monthly installment under the Note is not paid when due, or if Borrower should be in default under any provision of this Deed of Trust, or if Borrower is in default under any other Deed of Trust or other instrument secured by the Property, the entire principal amount outstanding under the Note and this Deed of Trust and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to the Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with the Trustee this Deed of Trust and any Notes and all documents evidencing expenditure secured thereby. After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law following recordation of such notice of default, that notice of sale having been given as then required by law, the Trustee, without demand on Borrower, shall sell the Property at the time and place specified by such Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset his bid to the extent of the total amount owing to him under the Note and this Deed of Trust, including the Trustee's fees and expenses. The Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. The Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by the Trustee at the time and place last appointed for sale.

The Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, the Trustee or Lender may purchase the Property at such sale. After deducting all costs, fees and expenses of the Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, the Trustee first shall apply the proceeds of sale to payment of all sums expended under the terms of this Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note or Notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

**16. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust, this Note and Notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in Paragraph 15 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action, as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**17. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that so long as Borrower is not in default hereunder, Borrower shall have the right to collect and retain such rents as they become due and payable.

Upon Borrower's default or abandonment of the Property, Lender, in person or by agent, shall be entitled to collect all rents directly from the payors thereof, or have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

**18. Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (1) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (2) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment under the Note.

**19. Legislation.** If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of the Note, the Deed of Trust or any Rider, unenforceable according to their terms, or all or any part of the sums secured hereby uncollectible, as otherwise provided in this Deed of Trust or the Note, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Deed of Trust to be immediately due and payable.

**20. Satisfaction.** Upon payment of all sums secured by this Deed of Trust, this Deed of Trust shall become null and void and Lender or Trustee shall release this Deed of Trust. If Trustee is requested to release this Deed of Trust, all instruments evidencing satisfaction of the indebtedness secured by this Deed of Trust shall be surrendered to Trustee. Borrower shall pay all costs of recordation, if any. Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee.

**21. Substitute Trustee.** Lender may from time to time at Lender's discretion and without cause or notice, remove Trustee and appoint a Successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the Successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Waiver of Homestead.** Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all marital property rights in the Property.

**23. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal, or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 23, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.   As used in this paragraph 23, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

CA Deed of Trust
231233 cadeed (Rev 19, 06-01)                          Page 7                          251  8062299616

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ [SEAL]
DONALD HUNTINGTON

MASSACHUSETTS [Space Below This Line For Acknowledging]
STATE OF ~~CALIFORNIA~~
                                    ): ss
COUNTY OF NORFORK

On       (date)    August 16,          2007       before    me
Barbara R. Dismit Notary       (name & title of the officer), personally appeared DONALD
HUNTINGTON personally known to me ( or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal

Signature: Barbara Q. Dismit              (SEAL)

My Commission Expires: March 28, 2014

REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes,
together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are
hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to
reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or
persons legally entitled thereto.

Dated: _____    _____
                                              Vice President

CA Deed of Trust                         Page 8                         251 6682299816
231233 cadasd (Rev 19, 08-01)

# PRIME EQUITY LINE RIDER

THIS PRIME EQUITY LINE RIDER is made this day August 13, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Mortgagor") to secure the Prime Equity Line Agreement and Disclosure Statement executed by the Mortgagor of the same date (said Agreement is referenced in the Security Instrument and this Rider as "Note") to **Wachovia Mortgage Corporation,** (the "Lender") and covering the property described in the Security Instrument and located at:

**9 ST FRANCIS CIRCLE, NAPA, CA 94558**
Property Address

**ADDITIONAL COVENANTS**
In addition to the covenants and agreements made in the Security Instrument, Mortgagor and Lender further covenant and agree to the following additional terms and conditions:

1.      **Adjustable-Rate Loan**
        The Security Instrument secures a Note that provides for changes in the interest rate, as more particularly described in said Note.

2.      **Amendments to the Security Instrument Maturity Date**
        The second paragraph on page one of the Security Instrument is deleted in its entirety and shall read as follows:

        "The Lender has made a loan to Mortgagor the maximum indebtedness at any one time shall not exceed $100,000.00 which loan is an open-end line of credit as evidenced by Mortgagor's Note and extensions, modifications and renewals thereof which provides for obligatory advances of all or part of the loan proceeds from time to time, subject to provisions in the Note. The entire indebtedness evidenced by the Note, if not sooner paid, will be due and payable on **August 12, 2047.**"

        Paragraph 20 of the Security Instrument shall be deleted in its entirety and read as follows:

        "When the balance of all outstanding sums including finance charges and other charges, if any, secured by the Security Instrument is zero, the Lender shall upon request of the Borrower, release the Security Instrument. Borrower will pay all recordation costs, if any. Absent a request from the Borrower, the Security Instrument shall remain in full force and effect for the term set forth above. Lender, at Lender's option, may allow a partial release of the Property on terms acceptable to Lender and Lender may charge a release fee."

3.      **Obligation to Lend**
        Lender is absolutely obligated under the terms of the Note to make advances not to exceed, at any one time in the aggregate, the amount stated in the Note and Mortgagor has agreed to repay any advances under the terms of the Note. Lender's absolute obligation to make advances to Mortgagor under the Note ends when Lender terminates the right to make advances and

CA PEL Rider
231237 caprid (Rev 10, 05-01)                                     Page 1                                  251  8882299816

demands repayment of the outstanding obligation or prohibits additional extensions of credit under the Note or the Security Instrument. Nevertheless, Lender may waive the right to terminate or prohibit additional advances. If Lender does not terminate or prohibit additional advances, Lender remains obligated to make advances to Mortgagor under the terms of the Note. However, that waiver does not bind Lender if the same or a different event occurs or is continuing at a later time.

4.    **Note Provisions - Conflict**
In case of a conflict between the terms of the Note and the Security Instrument governing remedies of default or termination of advances, the terms of the Note shall control.

By signing below, Mortgagor accepts and agrees to the terms and conditions contained in this Rider.

_____(SEAL)
DONALD HUNTINGTON

_____ [Space Below This Line For Acknowledging]
STATE OF ~~CALIFORNIA~~ MASSACHUSETTS          )
                                              ) ss
COUNTY OF _NORFOLK_____                    )
On ____(date)____ _August 16_____  _2007_____ before     me
_Barbara A. Deimel, Notary_  (name & title of the officer), personally appeared DONALD HUNTINGTON personally known to me ( or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature: _Barbara A. Deimel_____ (SEAL)
My Commission Expires: _March 28, 2014____

SEAL AFFIXED

CA PEL Rider
231237 capfd (Rev 10, 06-01)                Page 2                     251  8882299818

**END OF DOCUMENT**

Title No. 07-280301869
Locate No. CAFNT0928-0928-0003-0280301869

**LEGAL DESCRIPTION**

*SCHEDULE "A"*

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF NAPA, COUNTY OF NAPA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 26, AS SHOWN ON THE MAP ENTITLED, "FINAL MAP OF OAK RIDGE", FILED JUNE 29, 1987 IN BOOK 15 OF MAPS AT PAGES 34-36 IN THE OFFICE OF THE COUNTY RECORDER OF SAID MAPS COUNTY.

APN: 043-382-017

2

CLTA Preliminary Report Form - Modified (11/17/06)

# EXHIBIT "B"

RECORDING REQUESTED BY:
First American Title Company
3 First American Way
Santa Ana, CA 92707

WHEN RECORDED MAIL TO:
Affinia Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

**2018-0005020**

| | |
|---|---|
| Recorded | REC FEE 24.00 |
| Official Records | |
| County of | HOUSING TAX 75.00 |
| Napa | |
| JOHN TUTEUR | |
| Assessor-Recorder-Co. | |
| | EV |
| 08:27AM 19-Mar-2018 | Page 1 of 4 |

[SPACE ABOVE THIS LINE FOR RECORDER'S USE]

APN: 043-382-017-000    TS No.: 9508-1762    TSG ORDER No.:8730311

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

### 違約通知
注：本文件包含一个信息摘要
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

채무 불이행 통지서
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### AVISO DE INCUMPLIMIENTO
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

### PABATID NG HINDI PAGKAKABAYAD

### THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
LƯU Ý: KÈM THEO ĐẦY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $7,111.76 as of 03/15/2018, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and Deed of Trust or mortgage. If you fail to make future payments on the loan,

33                                    Exhibit A - Page 39

pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and Deed of Trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Wells Fargo Home Equity**
**c/o Affinia Default Services, LLC**
**301 E. Ocean Blvd, Suite 1720**
**Long Beach, CA 90802**
**Attn: Foreclosure Dept.**
**Phone: 833-290-7452**
**Fax: 562-983-5379**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That Affinia Default Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 08/13/2007, executed by DONALD HUNTINGTON, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor(s), to secure certain obligations in favor of WACHOVIA MORTGAGE CORPORATION, as beneficiary, recorded on 08/21/2007 as Document No.: 2007-0027410, of Official Records in the Office of the Recorder of Napa County, California describing land therein as: As more fully described on said Deed of Trust.

Included among these obligations is one Note(s) for the original sum of **$100,000.00** that that beneficial interest under such Deed of Trust and the obligations secured thereby presently held by the beneficiary or its agent; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:
**Installment of Principal and Interest which became due on 03/12/2017, plus impounds and/or advances together with late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges and any reoccurring obligation that become due, including trustee's fees and expenses.**

That by reason therefore, the present beneficiary under such Deed of Trust has declared and does

34

**Exhibit A - Page 40**

hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS WAIVER OF ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

The beneficiary, mortgage servicer, or agent of beneficiary or mortgage servicer declares that it has complied with California Civil Code Section 2923.5. and/or 2923.55, wherever applicable. The Declaration is attached.

Dated: March 15, 2018

Affinia Default Services, LLC, as Trustee for the Beneficiary

By: _____

Taylor Williams, Foreclosure Associate

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this is not an attempt to impose personal liability upon you for payment of that debt. In the event you have received a bankruptcy discharge, any action to enforce the debt will be taken against the property only.

## DECLARATION OF COMPLIANCE
*(California Civil Code Section 2923.5*

Borrower(s):    DONALD A HUNTINGTON


Property Address:  9 ST FRANCIS CIRCLE
NAPA, CA 94558


The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.5(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☒ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.5(e) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

4. ☐ The requirements of California Civil Code §2923.5 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code §2924.15(a).


I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Wells Fargo Bank, N.A.


By:
Name:    Francisco Castillo
Title:    VP Loan Documentation
Date:    1/19/18

053_CA_V3

## VERIFICATION

I, the undersigned certify and declare that I have read the Verified Complaint and know its contents.

I am a party to this action. The matters stated in the document described above are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Executed on May 20, 2018 at County of Napa, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Donald Huntington

18.
Verified Complaint

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): RA & Associates, APC Malalai Anbari, Esq. (SBN 304482) 505 N. Brand Blvd., Ste. 800 Glendale, CA 91203 | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.: (818) 230-3220     FAX NO.: (818) 230-3211
ATTORNEY FOR (Name): Plaintiff, Donald Huntington

**ENDORSED**

**MAY 23 2018**

Clerk of the Napa Superior Court
By:_____ K. ROSE
Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF NAPA
STREET ADDRESS: 825 Brown St.
MAILING ADDRESS: 825 Brown St.
CITY AND ZIP CODE: Napa CA 94559
BRANCH NAME: Historic Courthouse

CASE NAME:
Huntington v. Wells Fargo Bank, N.A., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 18CV000681 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: | |

Items 1–6 below must be completed (see instructions on page 2).

**1.** Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [✓] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

**2.** This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
**4.** Number of causes of action (specify): Six (6)
**5.** This case [ ] is [✓] is not a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: May 23, 2018
Malalai Anbari, Esq.
_____ ▶ _____
(TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

*File By Fax*

38                                    Exhibit A - Page 44

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]  **CIVIL CASE COVER SHEET**  Page 2 of 2



Alternative
Dispute
Resolution
Information

# ADR

The plaintiff/petitioner must include a copy of this notice with the complaint when serving the defendant/respondent. Cross complainants must serve a copy of this notice on any new parties named to the action. [Civil only]

**What is ADR?**   Alternative Dispute Resolution [ADR] is the term used to describe all of the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation, and settlement conference are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

**Resource**   To learn more about the types and benefits of ADR, and whether it may be appropriate for your case, please access the California Courts website at http://www.courts.ca.gov/programs-adr.htm.

This site also contains the Judicial Council forms applicable to ADR.